# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### TAMPA DIVISION

CHRISTOPHER BROWN,

      Petitioner,

v.                                        Case No. 8:15-cv-2353-T-36AAS

SECRETARY, DEPARTMENT
OF CORRECTIONS,

      Respondent.

_____/

## ORDER

      Christopher Brown, a Florida inmate, timely filed a *pro se* petition for writ of habeas corpus under 28 U.S.C. § 2254 challenging his Hillsborough County convictions. (Dkt. 1). Respondent filed a response (Dkt. 10) and Brown filed a reply (Dkt. 20). Upon review, the petition will be DENIED.

### Procedural History

      Brown was convicted after a jury trial of aggravated battery on a law enforcement officer (count two, as to Officer Pemberton), aggravated fleeing to elude (count three), resisting an officer with violence (count four), providing a false name to a law enforcement officer (count five), and driving without a valid license (count six). (Dkt. 12, Ex. 3). He was acquitted of another count of aggravated battery on a law enforcement officer (count one, as to Corporal Rosa). (*Id.*). The trial court sentenced him to concurrent terms of 30 years in prison as a prison releasee reoffender ("PRR") on count two; 15 years in prison on count three; five years in prison as a PRR on count four; and 60 days in prison on counts five and six. (Dkt. 12, Ex. 4). The state appellate court *per*

*curiam* affirmed the convictions and sentences.  (Dkt. 12, Ex. 7).

Brown filed a motion for postconviction relief under Florida Rule of Criminal Procedure 3.850 and an amended motion.  (Dkt. 12, Exs. 8, 10).  The state court denied the motions after holding an evidentiary hearing on one claim.  (Dkt. 12, Exs. 9, 13, 16).  The state appellate court affirmed in part and reversed in part.  *Brown v. State*, 23 So.3d 214 (Fla. 2d DCA 2009).  On remand, the state court permitted Brown to amend two claims and conducted an evidentiary hearing on six claims before entering a final order denying relief.  (Dkt. 12, Exs. 21-25).  The state appellate court *per curiam* affirmed the denial of relief.  (Dkt. 12, Ex. 28).  Brown filed two more motions for postconviction relief, which the state court denied as untimely and successive.  (Dkt. 12, Exs. 30-32).  The state appellate court *per curiam* affirmed the denials of relief.  (Dkt. 12, Ex. 33).

## Trial Testimony/Factual Background

The State's Evidence

Five law enforcement officers testified for the State.  Their testimony set forth the following. At about 3:00 a.m. on August 29, 2003, Corporal Oswaldo Rosa was finishing a traffic stop near Westshore Boulevard in Tampa when Brown drove past.  The tail lights on Brown's car did not work, so Corporal Rosa pulled him over.  As Corporal Rosa prepared to approach Brown's car, he noticed Brown making "furtive" movements.  (Dkt. 12, Ex. 2, p. 138).  Out of caution, therefore, Corporal Rosa stood by the rear of the car, on the driver's side.  Brown stared straight ahead, never turning to make eye contact with Corporal Rosa.  Brown asked if he needed to produce his driver's license, and after Corporal Rosa said that he did, Brown accelerated and cut the steering wheel to the left.  The left rear tire ran over the toe of Corporal Rosa's boot, and when Corporal Rosa put his hands up in a "defensive move," the side of the car hit Corporal Rosa's hand.  (*Id.*, p. 141).

Corporal Rosa got back into his car and followed Brown. Brown began speeding, driving at times between 60 and 80 miles per hour. Brown also ran several stop signs and turned his headlights off. Officer Mike Baranowski and Detective Richard O'Connor, riding together in another police car, joined the pursuit behind Corporal Rosa. A third car, driven by Officer R.D. Pemberton, and a fourth car, driven by Officer James Neil, also joined the chase.

As Brown traveled north on Westshore Boulevard, his car's right front tire blew out. When Brown turned east on Fair Oaks Drive, Corporal Rosa and Officer Baranowski followed him down that street. Officer Pemberton and Officer Neil turned east on Chapin Street, a parallel street to the south. Brown continued for a short distance, turned south, and then turned west onto Chapin Street. Officer Pemberton stopped in his lane on Chapin Street when he saw Brown's car coming. Brown had enough room in his own lane to pass Officer Pemberton, but Brown rammed Officer Pemberton's police car head-on. The impact pushed Officer Pemberton's car back ten to fifteen feet, and both cars caught on fire.

Brown jumped out of his car and ran towards a fenced-in yard. Several officers pulled him away from the fence. Brown resisted, even as the officers told him he was under arrest and directed him to stop resisting. As they tried to restrain Brown, Brown attempted to elbow them and kick them, and succeeded in kicking Detective O'Connor. When Brown was arrested, he identified himself as Keith Smith. He admitted that he fled because he lacked a valid driver's license.

The Defense's Evidence

Brown was the sole defense witness. His testimony set forth the following. Brown was dating a woman named Sharona Buckalew, who had recently moved to Tampa from Texas. Many police officers, including Corporal Rosa, regularly ate at the restaurant where Buckalew worked.

Several days before the incident, Brown and Buckalew argued in the restaurant's parking lot. Corporal Rosa emerged from the restaurant and told Brown that Buckalew did not want anything to do with him and that he should not come back.

On August 29, 2003, Brown was driving to get Buckalew from work when he passed a police car that had pulled over another motorist. As he drove by, Brown made eye contact with the officer, whom he recognized as Corporal Rosa. Corporal Rosa immediately got back into his car and pulled Brown over. Corporal Rosa asked Brown where he was going, and Brown responded that he was going to pick up Buckalew. Corporal Rosa said, "that's the fucking problem right there," maced Brown, told him to get out of the car, hit Brown's car door and windshield with his flashlight, and tried to pull Brown out of the car. (*Id*., p. 269). Brown drove away because he feared for his safety. After he turned a corner, he heard shots, and realized that Corporal Rosa had shot his tire out.

As Brown turned onto Chapin Street, he had trouble controlling his car due to the flat tire, despite traveling only about 10 to 15 miles per hour. The collision was caused when Officer Pemberton drove his car into Brown's car. After the crash, Brown ran because he was scared. He knocked on the door of the first house he saw because he "want[ed] some people to see what was going on," but the officers caught up to him. (*Id.*, p. 275). Officer Pemberton yelled at Brown for damaging his special Yankees police car (which had been donated to the Tampa Police Department by New York Yankees owner George Steinbrenner) and told the other officers to hold Brown's head up so that Officer Pemberton could hit Brown. Brown never resisted the officers or hit anyone, and was just trying to cover himself as he was being hit  Brown passed out from the beating. His head was bleeding, and he received stitches on top of his head. Although Brown had provided the alias of Keith Smith during a previous arrest, he did not provide a false name when arrested following this

incident.

## Standard Of Review

The Antiterrorism and Effective Death Penalty Act ("AEDPA") governs this proceeding. *Carroll v. Sec'y, DOC*, 574 F.3d 1354, 1364 (11th Cir. 2009). Habeas relief can only be granted if a petitioner is in custody "in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Section 2254(d) provides that federal habeas relief cannot be granted on a claim adjudicated on the merits in state court unless the state court's adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A decision is "contrary to" clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams v. Taylor,* 529 U.S. 362, 412-13 (2000). A decision is an "unreasonable application" of clearly established federal law "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413.

The AEDPA was meant "to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Bell v. Cone*, 535 U.S. 685, 693 (2002). Accordingly, "[t]he focus . . . is on whether the state court's application of clearly established federal law is objectively unreasonable, and . . . an unreasonable application is different from an incorrect one." *Id.* at 694. *See also Harrington v. Richter*, 562 U.S. 86, 103 (2011) ("As

a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.").

The state appellate court affirmed the denial of postconviction relief without discussion.[1] This decision warrants deference under § 2254(d)(1) because "the summary nature of a state court's decision does not lessen the deference that it is due." *Wright v. Moore,* 278 F.3d 1245, 1254 (11th Cir. 2002). *See also Richter,* 562 U.S. at 99 ("When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary."). When a state appellate court issues a silent affirmance, "the federal court should 'look through' the unexplained decision to the last related state-court decision that does provide a relevant rationale" and "presume that the unexplained decision adopted the same reasoning." *Wilson v. Sellers*, 138 S.Ct. 1188, 1192 (2018).

### Exhaustion Of State Court Remedies; Procedural Default

A federal habeas petitioner must exhaust his claims for relief by raising them in state court before presenting them in his petition. 28 U.S.C. § 2254(b)(1)(A); *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999) ("[T]he state prisoner must give the state courts an opportunity to act on his claims before he presents those claims to a federal court in a habeas petition."). The requirement of exhausting state remedies as a prerequisite to federal review is satisfied if the petitioner "fairly

---

[1] When Brown appealed the denial of his initial and first amended postconviction motions, the state appellate court affirmed in part and reversed in part. Although the state appellate court issued a written opinion, its affirmance of several of Brown's claims was "without comment." *Brown*, 23 So.3d at 215.

presents" his claim in each appropriate state court and alerts that court to the federal nature of the claim. *Picard v. Connor*, 404 U.S. 270, 275-76 (1971). "If the petitioner has failed to exhaust state remedies that are no longer available, that failure is a procedural default which will bar federal habeas relief, unless either the cause and prejudice or the fundamental miscarriage of justice exception is established." *Smith v. Jones*, 256 F.3d 1135, 1138 (11th Cir. 2001). *See also Bailey v. Nagle*, 172 F.3d 1299, 1305 (11th Cir. 1999) ("[F]ederal courts may treat unexhausted claims as procedurally defaulted, even absent a state court determination to that effect, if it is clear from state law that any future attempts at exhaustion would be futile. . . . A habeas petitioner can escape the procedural default doctrine either through showing cause for the default and prejudice . . . or establishing a 'fundamental miscarriage of justice.'").

### Ineffective Assistance Of Counsel

Ineffective assistance of counsel claims are analyzed under the test established in *Strickland v. Washington*, 466 U.S. 668 (1984). *Strickland* requires a showing of deficient performance by counsel and resulting prejudice. *Id.* at 687. To show deficient performance, a petitioner must demonstrate that "counsel's representation fell below an objective standard of reasonableness." *Id.* at 687-88. A court must consider whether, "in light of all the circumstances, the identified acts or omissions [of counsel] were outside the wide range of professionally competent assistance." *Id.* at 690. However, "counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id.*

Brown must demonstrate that counsel's alleged error prejudiced the defense because "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Id.* at 691-92. To show

prejudice, a petitioner must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694. Obtaining relief on a claim of ineffective assistance of counsel is difficult because "[t]he standards created by *Strickland* and § 2254(d) are both 'highly deferential,' and when the two apply in tandem, review is 'doubly' so." *Richter*, 562 U.S. at 105 (citations omitted). *See also Burt v. Titlow*, 571 U.S. 12, 15 (2013) (this doubly deferential standard of review "gives both the state court and the defense attorney the benefit of the doubt.").

## Discussion

Ground One A

Brown's car was subject to forfeiture and auctioned after his arrest. Brown argues that counsel was ineffective for failing to ensure that his car was preserved because it contained physical evidence that would have refuted Corporal Rosa's testimony about the traffic stop. Brown asserts that an examination of the car would have shown that 1) the windshield was broken from the outside; 2) mace had been sprayed in the car; 3) the tail lights were working; and 4) the tire was flattened because it had been shot.

The state court conducted an evidentiary hearing on this claim. Brown testified consistent with the above arguments. (Dkt. 12, Ex. 24, pp. 267-68). Brown also testified that he was booked under the name Keith Smith when he was arrested in August 2003, and that he failed to appear at his first court date. (*Id.*, pp. 294-95). He agreed that he did not appear in court under his given name until February 2004, and at that time, Assistant Public Defender Anthony Candela was appointed to represent him. (*Id.*, p. 295).

Assistant Public Defender Richard Strickland, who represented Brown at trial, also testified at the hearing. Strickland explained that Candela withdrew after Brown hired attorney Thomas Maiello in April 2004. (*Id.*, 302-03). After Maiello apparently withdrew, Strickland was assigned to Brown's case on September 28, 2004. (*Id.*, p. 303). Strickland testified that he found out that the car was sold before Brown was represented by an attorney:

> I extensively investigated the disposition of the car. And I also extensively investigated what had happened from the date he was arrested . . .
>
> Mr. Brown was arrested on August the 29th of 2003. He was booked into the jail under the name of Keith Smith and the jail records so reflect. He bonded out the same day or a day later under the name of Keith Smith with Rosenberg Bail Bonds. They believed him to be Keith Smith as well. So when he was set to be arraigned on the 19th of December of 2003 he failed to appear probably because Rosenberg Bail Bonds couldn't find Keith Smith at the time. As it turns out I discovered that on that same date where he was supposed to be arraigned and didn't show up December the 19th of 2003 his car was sold at auction by the Tampa Police Department. That was again December the 19th, 2003.
>
> He hadn't even been appointed an attorney at that point in time because he didn't show up for arraignment. He showed up for arraignment on the 16th of February of 2004 and Mr. Candela was appointed to represent him at that time. Then on April the 13th of 2004 he hired Thomas Maiello. Mr. Maiello entered a notice of appearance, our office withdrew. I didn't come on to the case until September the 28th of 2004.
>
> Well, if we look at that this car had been auctioned off in December.
>
> . . .
>
> So it's my belief that - - well, certainly by the time I got the case this car has been long gone but I'm - - I'm pretty sure in my own mind that by the time Mr. Candela was appointed nearly - - almost two months later, whoever bought the car had either fixed it up and sold it or junked it. I don't think there's anything left of that car shortly after it was - - certainly wasn't in the same condition as it was at the time of the accident shortly after it was sold.
>
> . . .
>
> So in a sense, you know, this - - there's nothing anybody could have done in my

opinion to represent him whether it be Candela, Maiello or myself to have resurrected that car which was gone and sold at auction two months before he ever was . . . appointed an attorney. . .

(*Id.*, pp. 302-04).

Strickland also testified that he filed a motion to dismiss due to the destruction of Brown's car, but that the motion was denied. (*Id.*, p. 304; Dkt. 12, Ex. 35). The state court denied Brown's claim:

> After reviewing the allegations, the testimony, evidence, and arguments presented at the June 12, 2012, evidentiary hearing, the court file, and the record, the Court finds Mr. Strickland's testimony to be more credible than that of Defendant. Therefore, the Court finds by the time Mr. Candela, Mr. Maiello, or Mr. Strickland were appointed to represent Defendant, Defendant's vehicle had already been sold at auction and was no longer in evidence. Consequently, the Court finds Defendant cannot demonstrate that Mr. Candela, Mr. Maiello, or Mr. Strickland acted deficiently in failing to preserve Defendant's vehicle when Defendant's vehicle had already been sold at auction and was no longer in evidence at the time Mr. Candela was appointed to represent Defendant. As such, no relief is warranted upon the allegations in claim one.

(Dkt. 12, Ex. 25, pp. 189-90).

The state court's finding that Strickland was credible is a factual determination that is presumed to be correct. Brown does not rebut this presumption by clear and convincing evidence. *See Rolling v. Crosby*, 438 F.3d 1296, 1301 (11th Cir. 2006) ("The factual findings of the state court, including the credibility findings, are presumed to be correct unless [the petitioner] rebuts the presumption by clear and convincing evidence.") (citing 28 U.S.C. § 2254(e)(1)). *See also Consalvo v. Sec'y, Dep't of Corr.*, 664 F.3d 842, 845 (11th Cir. 2011) ("Federal courts have no license to redetermine credibility of witnesses whose demeanor has been observed by the state trial court, but not by them. We consider questions about the credibility and demeanor of a witness to be questions of fact.") (internal quotation marks and citations omitted).

The testimony the state court found credible shows that Brown's car was no longer available to be preserved by the time Brown's first attorney was appointed. Brown does not rebut the presumption of correctness owed to the state court's factual finding that his car had been sold before any attorney was appointed to represent him. Accordingly, Brown has not shown that any of his attorneys acted deficiently in failing to move to preserve the car. And given the trial court's denial of Strickland's motion to dismiss the case due to the State's destruction of the car, Brown has not demonstrated that alternative action by any of his attorneys would have been successful. Accordingly, Brown does not show that counsels' performance fell outside the "wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689. The state court's decision did not involve an unreasonable application of *Strickland*, nor was it based on an unreasonable factual determination.[2] Brown is not entitled to relief on Ground One A.[3]

Ground One C

Prior to trial, Brown filed a motion to dismiss counts one, two, and three (the counts of aggravated battery on a law enforcement officer and aggravated fleeing to elude). (Dkt. 12, Ex. 35). Citing *Arizona v. Youngblood*, 488 U.S. 51 (1988), Brown alleged that the State violated his due process rights by "effectively destroying" his car in bad faith. (*Id.*, p. 92). The state court denied

---

[2] Within Ground One A, Brown claims that he was denied his Sixth Amendment right to confront Candela at the postconviction evidentiary hearing. Brown's claim is not cognizable on federal habeas review because it challenges the proceedings in the state postconviction court rather than the validity of his conviction. *See Carroll v. Sec'y, DOC*, 574 F.3d 1354, 1365 (11th Cir. 2009) ("[D]efects in state collateral proceedings do not provide a basis for habeas relief . . . The reasoning behind this well-established principle is straightforward: a challenge to a state collateral proceeding does not undermine the legality of the detention or imprisonment–*i.e.*, the conviction itself–and thus habeas relief is not an appropriate remedy.").

[3] Brown alleges that counsel was ineffective in not arguing that the government violated *Brady v. Maryland*, 373 U.S. 83 (1963) in disposing of his car. Brown did not exhaust this argument in state court. (Dkt. 12, Ex. 8, pp. 29-32). Notwithstanding the lack of exhaustion and resulting procedural default of this claim, it fails on the merits for the same reason addressed in Ground One C, *infra*.

Brown's motion because he did not establish bad faith. Specifically, the motion contains a stamp with the judge's name along with what appears to be the judge's signature and a handwritten notation that states, "Deny – no evid. of bad faith by LEO." (Dkt. 12, Ex. 35, p. 91).

Brown now alleges that counsel was ineffective for inadequately presenting the motion to dismiss. He claims that counsel's reliance on *Youngblood* was misplaced, and asserts that counsel should have instead argued that the State violated *Brady v. Maryland*, 373 U.S. 83 (1963). The Court finds that this claim is unexhausted because Brown did not raise it in his postconviction motion.[4] Brown cannot return to state court to present the claim in an untimely, successive postconviction motion. *See* Fla. R. Crim. P. 3.850(b), (h). Accordingly, the claim is procedurally defaulted. *See Smith*, 256 F.3d at 1138. Brown has not established that an exception applies to excuse the default. *See id.*

Alternatively, Brown has not shown entitlement to relief on his claim. In addressing the government's destruction of evidence that is potentially useful to a criminal defendant, *Youngblood* holds that "unless a criminal defendant can show bad faith on the part of the police, failure to preserve potentially useful evidence does not constitute a denial of due process of law." 488 U.S. at 58. Brown argues that his case did not present "a *Youngblood* issue, because the evidence petitioner was entitled to wasn't subject to degradation" like the semen samples at issue in *Youngblood*. (Dkt. 1, p. 13). Accordingly, he claims, counsel should have raised the claim under *Brady*. *Brady* holds that "the suppression by the prosecution of evidence favorable to an accused

---

[4]In claim three of his initial postconviction motion, Brown made the distinguishable claim that counsel was ineffective in "fail[ing] to follow up on defendant's request to move for dismissal or other remedial sanctions by raising a 'bad faith' claim.'" (Dkt. 12, Ex. 8, pp. 34-35). To the extent Brown intends to raise the same argument that he presented in claim three of his postconviction motion, Brown fails to establish that the state court unreasonably applied *Strickland* or unreasonably determined the facts in denying it. (*See* Dkt. 12, Ex. 9, p. 82).

upon request violates due process where the evidence is material either to guilt or to punishment, *irrespective of the good faith or bad faith of the prosecution*." 373 U.S. at 87 (emphasis added). Brown claims that "counsel['s] failure to raise a *Brady* violation and show how the missing evidence prejudiced petitioner made [the motion] insufficient." (Dkt. 1, p. 13).

      Brown has not demonstrated that counsel was ineffective in his presentation of the motion to dismiss. Because the car was destroyed, counsel had to try to show bad faith, as addressed in *Youngblood*:

> "In order to show that the loss of evidence by the government constitutes a denial of due process, the defendant must show that the evidence was likely to significantly contribute to his defense. *California v. Trombetta,* 467 U.S. 479, 488, 104 S.Ct. 2528, 2534, 81 L.Ed.2d 413 (1984)." *United States v. Brown,* 9 F.3d 907, 910 (11th Cir.1993). . . . "[F]ailure to preserve this 'potentially useful evidence' does not violate the due process clause 'unless a criminal defendant can show bad faith on the part of the police' " *Illinois v. Fisher,* 540 U.S. 544, 547-48, 124 S.Ct. 1200, 1202, 157 L.Ed.2d 1060 (2004), quoting *Arizona v. Youngblood,* 488 U.S. 51, 58, 109 S.Ct. 333, 337, 102 L.Ed.2d 281 (1988).

*United States v. Revolorio-Ramo*, 468 F.3d 771, 774 (11th Cir. 2006)

      Accordingly, "[t]o make a valid claim that the government improperly withheld or destroyed possibly exculpatory evidence under *Brady*, a defendant also must demonstrate that the government acted in bad faith." *United States v. Lindsey*, 482 F.3d 1285, 1293 (11th Cir. 2007) (citing *Youngblood*, 488 U.S. 51). *See also James v. Singletary*, 957 F.2d 1562, 1567 n.4 (11th Cir. 1992) ("Destruction of potentially exculpatory evidence violates *Brady* only if the police acted in bad faith.") (citing *Youngblood*, 488 U.S. 51). "Bad faith is present if the officer destroyed the evidence 'in a calculated effort to circumvent the disclosure requirements established by *Brady v. Maryland*.'" *United States v. Cruz*, 508 Fed. App'x 890, 901 (11th Cir. 2013) (quoting *California v. Trombetta*, 467 U.S. 479, 488 (1984)). *See Youngblood*, 488 U.S. 51, 56 n.* ("The presence or absence of bad

faith by the police for purposes of the Due Process Clause must necessarily turn on the police's knowledge of the exculpatory value of the evidence at the time it was lost or destroyed.").

Here, even if counsel had more specifically alleged how the car was "likely to significantly contribute" to Brown's defense, *see Revolorio-Ramo*, 468 F.3d at 774, Brown has not identified what other facts or argument counsel could have presented to show that the government acted in bad faith in failing to preserve his car. His claim that his car might have contained exculpatory evidence, without more, is insufficient to establish entitlement to relief. *See, e.g., Lindsey*, 482 F.3d at 1293 (a claim that the government's destruction of a fingerprint card that "could have been exculpatory" was "both highly speculative and insufficient to rise to the level of a *Brady* error."). Accordingly, Brown has not shown that counsel performed deficiently in presenting the motion to dismiss, or that Brown was prejudiced as result of counsel's performance. Brown is not entitled to relief on Ground One C.

Ground One B

Brown asserts that counsel was ineffective in failing to investigate Officer Pemberton's police car. He claims that counsel could have recovered video evidence from inside the car and could have examined paint transfer on the car's exterior. Brown contends that this evidence would have shown that Officer Pemberton caused the collision by driving into Brown's car. Brown argues that counsel was ineffective in not seeking preservation of Officer Pemberton's car, in not raising a *Brady* violation, and in not sending an investigator to examine Officer Pemberton's car.[5]

In claim five of his initial postconviction motion, Brown argued that trial attorney Richard Strickland was ineffective in not investigating the car. The state court denied the claim because

_____

[5] To the extent Brown argues that an investigation into the vehicles would have revealed how he obtained his head injury, his claim is denied for the same reasons addressed in Ground One G, *infra*.

Brown failed to allege facts showing that he was prejudiced by Strickland's performance. (Dkt. 12, Ex. 9, p. 83). A review of Brown's initial postconviction motion shows that Brown did not allege facts demonstrating prejudice. (Dkt. 12, Ex. 8, p. 36). Accordingly, to the extent Brown now presents the claim raised in claim five of his initial postconviction motion, he does not show that the state court unreasonably applied *Strickland* in denying it. Alternatively, even if he sufficiently alleged prejudice, his claim fails for the same reasons addressed below.

In claim two of his first amended postconviction motion, Brown argued that both Strickland and his first attorney, Anthony Candela, were ineffective in not investigating Officer Pemberton's car. The state court held an evidentiary hearing on this version of the claim. Brown testified consistent with the above contentions about the alleged video and paint transfer evidence. (Dkt. 12, Ex. 24, pp. 276, 277-78). However, Brown conceded that he was not sure whether any video evidence existed. (*Id.*, pp. 299-30).

Richard Strickland testified that he believed Officer Pemberton's car had been totaled and no longer existed by the time he was assigned to Brown's case. (Dkt. 23-3, p. 312). Strickland also testified that he did not believe further investigation with an accident reconstruction expert would have benefitted the defense. He explained that photographs from the scene showed that Officer Pemberton's vehicle had stayed in its lane. (Dkt. 12, Ex. 24, pp. 305-06). Strickland testified that he "saw nothing that a reconstruction expert could have done given the lack of any physical evidence that was left and what the pictures show[ed] that would have helped in any way." (Dkt. 12, Ex. 24, p. 306).

Strickland also testified that he looked into the existence of a video from Officer Pemberton's car. Strickland explained that he reviewed the notice of discovery, which indicated that

there was no video of the scene, and also asked the prosecutor if a video existed. (*Id.* p. 311). He

summarized, "to my knowledge that car was not equipped with [a] video camera and no such video

existed at the time. I'm sure . . . that had it existed it probably would have been used against us

based on the physical evidence that I see from the photographs." (*Id.*; Dkt. 23-3, p. 312). The state

court denied Brown's claim:

> After reviewing the allegations, the testimony, evidence, and arguments presented at the June 12, 2012, evidentiary hearing, the court file, and the record, the Court finds Mr. Strickland's testimony to be more credible than that of Defendant. Therefore, the Court finds by the time Mr. Candela, Mr. Maiello, or Mr. Strickland were appointed to represent Defendant, Officer Pemberton's police cruiser did not exist in evidence because it had been totaled. The Court further finds Defendant failed to present any admissible evidence that Officer Pemberton's cruiser had a camera installed in it. Consequently, the Court finds Defendant cannot demonstrate that Mr. Candela, Mr. Maiello, or Mr. Strickland acted deficiently in failing to preserve Officer Pemberton's police cruiser when the police cruiser did not exist in evidence and had already been totaled at the time Mr. Candela was appointed to represent Defendant. The Court finds Defendant cannot demonstrate any resulting prejudice as he failed to present any admissible evidence that Officer Pemberton's cruiser had a camera. As such, no relief is warranted upon the allegations in claim two.

(Dkt. 12, Ex. 25, pp. 194-95).

Brown does not establish entitlement to relief. Brown has not rebutted, by clear and

convincing evidence, the presumption of correctness afforded to the state court's factual findings,

including the findings that Strickland's testimony was credible and that Officer Pemberton's car no

longer existed by the time Candela was appointed to represent Brown. *See Rolling*, 438 F.3d at

1301. As no physical evidence from the car was available for examination by any of Brown's

attorneys, Brown does not establish deficient performance in not seeking preservation of the car.

And, to the extent Brown specifically challenges Strickland's failure to investigate, Strickland's

evidentiary hearing testimony shows that he took several steps to determine whether any video

existed but found no evidence that it did.

Further, the state court did not unreasonably conclude that Brown failed to establish prejudice. Brown has not offered any evidence that Officer Pemberton's car was equipped with a video recording device. Nor does he show how an examination of any paint transfer on Officer Pemberton's car would have shown that Officer Pemberton caused the accident, especially in light of Strickland's credible testimony that photographs showed Officer Pemberton's car had not left its lane of travel. Brown's unsubstantiated allegations do not establish ineffective assistance of counsel. *See Wilson v. United States*, 962 F.2d 996, 998 (11th Cir. 1992) ("Conclusory allegations of ineffective assistance are insufficient.") (citation omitted); *Tejada v. Dugger*, 941 F.2d 1551, 1559 (11th Cir. 1991) (a petitioner's vague and conclusory statements, unsupported by specific facts, cannot sustain an ineffective assistance of counsel claim). Accordingly, Brown does not show that the state court's denial of his claim involved an unreasonable application of *Strickland* or was based on an unreasonable determination of fact.

Finally, within Ground One B, Brown claims that his attorneys were ineffective in failing to allege a *Brady* violation with respect to Officer Pemberton's car. This claim is unexhausted because Brown failed to timely present it to the state court when given an opportunity to amend the ineffective assistance claim. (Dkt. 12, Ex. 22, pp. 83-84). Brown cannot return to state court to raise this claim in an untimely, successive postconviction motion. *See* Fla. R. Crim. P. 3.850(b), (h). Accordingly, the claim is procedurally defaulted. *See Smith*, 256 F.3d at 1138. Brown does not allege or demonstrate that an exception applies to excuse the default. *See id*.

Alternatively, Brown fails to show that his counsel were ineffective in not raising a *Brady* claim regarding Officer Pemberton's car. As addressed in Ground One C, *supra*, Brown must

establish that the State acted in bad faith in destroying Officer Pemberton's car. But he has not alleged specific facts or identified evidence to make such a showing. His speculative claim is insufficient to demonstrate ineffective assistance for failing to raise a *Brady* claim regarding Officer Pemberton's car. *See Lindsey*, 482 F.3d at 1293. Nor does he show that there is a reasonable probability the outcome would have been different had counsel filed such a motion. Brown is not entitled to relief on Ground One B.[6]

Ground One D

Brown argues that counsel was ineffective in failing to discover the identity of a witness to the traffic stop, Richard Homsher, and call Homsher at trial. Brown claims that Homsher was a passenger in the car that was pulled over when Brown drove by. Brown contends that Homsher was available to testify that the tail lights on Brown's car were working, and that Brown "did nothing to provoke [Corporal] Rosa pulling and firing his firearm." (Dkt. 1, p. 15). In support of his claim, Brown presents a January 27, 2005 letter to Strickland in which he asked Strickland to "depose the witness that . . . [Corporal] Rosa had pulled over, just before he saw me as I turned past him." (Dkt. 20-1, p. 16).

The state court conducted an evidentiary hearing on this claim. Brown testified that he told counsel the other vehicle's occupants were potential witnesses. (Dkt. 12, Ex. 24, p. 278). He testified that Richard Homsher contacted Sharona Buckalew[7] and told her that he saw "the whole incident." (*Id.*, p. 279). Brown maintained that Homsher was available to testify. (*Id.*, pp. 279-80).

___

[6] As he did in Ground One A, Brown claims that he was denied his right to confront Candela at the postconviction evidentiary hearing. Brown's challenge to the postconviction proceedings is not cognizable on federal habeas review. *See Carroll*, 574 F.3d at 1365.

[7] It is not clear how Homsher knew Buckalew.

But Brown conceded that he did not obtain Homsher's name until after the trial, that he never obtained an affidavit from Homsher, and that he did not know Homsher's location at the time of the evidentiary hearing. (*Id.*, pp. 296-97). Richard Strickland testified that he did not learn of Homsher's name prior to trial. (*Id.*, p. 309). The state court denied Brown's claim:

> After reviewing the allegations, the testimony, evidence, and arguments presented at the June 12, 2012, evidentiary hearing, the court file, and the record, the Court finds Mr. Strickland's testimony to be more credible than that of Defendant. Therefore, the Court finds Defendant never advised Mr. Strickland about Mr. Homsher. The Court finds Mr. Homsher failed to testify at the evidentiary hearing. Consequently, the Court finds Defendant cannot demonstrate that counsel acted deficiently in failing to investigate Mr. Homsher when he never provided Mr. Strickland with Mr. Homsher's name. The Court further finds Defendant cannot demonstrate any resulting prejudice when Defendant failed to present any admissible evidence to support his claim that Mr. Homsher would have testified as alleged. As such, no relief is warranted upon the allegations in claim four.

(Dkt. 12, Ex. 25, p. 198).

Brown does not show that the state court's factual finding that Brown failed to provide Strickland with Homsher's name prior to trial was incorrect. *See Rolling*, 438 F.3d at 1301. Additionally, the general request in Brown's January 2005 letter to counsel does not identify any potential witnesses by name or specifically address facts to which they could have testified. (Dkt. 20-1, p. 16). Accordingly, there is support for the state court's conclusion that Brown cannot show entitlement to relief because he failed to provide adequate information to counsel:

> "[I]n evaluating the reasonableness of a defense attorney's investigation, we weigh heavily the information provided by the defendant." *Newland v. Hall*, 527 F.3d 1162, 1202 (11th Cir. 2008); *see also Strickland*, 466 U.S. at 691, 104 S.Ct. at 2066 ("The reasonableness of counsel's actions may be determined or substantially influenced by the defendant's own statements or actions. Counsel's actions are usually based, quite properly, on informed strategic choices made by the defendant and on information supplied by the defendant. In particular, what investigation decisions are reasonable depends critically on such information."); *Chandler*, 218 F.3d at 1318 (same); *McClain v. Hall*, 552 F.3d 1245, 1251-52 (11th Cir.2008) (noting that whether defendant informed his trial counsel about defendant's abusive

childhood is "extremely important" to determining reasonableness of counsel's performance); *Blankenship v. Hall*, 542 F.3d 1253, 1276 (11th Cir.2008) (noting that "the petitioner is often in the best position to inform his counsel of salient facts relevant to his defense").

*Allen v. Sec'y, Fla. Dep't of Corr.*, 611 F.3d 740, 752 (11th Cir. 2010).

Moreover, Brown has not offered any evidence of what testimony Homsher would have provided, and he admitted that he never obtained a sworn statement from Homsher setting out such information. *See Buckelew v. United States*, 575 F.2d 515, 521 (5th Cir. 1978) ("[C]omplaints of uncalled witnesses are not favored, because the presentation of testimonial evidence is a matter of trial strategy and because allegations of what a witness would have testified are largely speculative."); *United States v. Ashimi*, 932 F.2d 643, 650 (7th Cir. 1991) ("[E]vidence about the testimony of a putative witness must generally be presented in the form of actual testimony by the witness or on affidavit. A defendant cannot simply state that the testimony would have been favorable; self-serving speculation will not sustain an ineffective assistance claim.") (footnotes omitted). Accordingly, Brown's speculation about Homsher's prospective testimony cannot establish ineffective assistance of counsel. *See Johnson v. Alabama*, 256 F.3d 1156, 1187 (11th Cir. 2001) ("Johnson offers only speculation that the missing witnesses would have been helpful. This kind of speculation is 'insufficient to carry the burden of a habeas corpus petitioner.'") (quoting *Aldrich v. Wainwright*, 777 F.2d 630, 636 (11th Cir. 1985)).

Because Brown has not demonstrated that the state court's decision involved an unreasonable application of *Strickland* or was based on an unreasonable factual determination, he is not entitled to relief on Ground One D.

Ground One E

Brown contends that he bought his car, which appears to have been a 1990 Honda Accord,[8] the day prior to the incident. He claims that counsel was ineffective in failing to uncover the name of the car dealer. Brown argues that the salesperson could have testified that the car's tail lights were working at the time of sale, thereby casting doubt on Corporal Rosa's testimony and showing his "ulterior motive" for stopping Brown. (Dkt. 1, p. 17). Brown also claims that "the state sold the car back" to the dealer. (*Id*., p. 18). To support his claims, Brown points to counsel's statement, in moving for a continuance of trial, that he had failed to adequately investigate the car.[9]

At the evidentiary hearing, Brown testified that his car's tail lights worked at the time of purchase. (Dkt. 12, Ex. 24, p. 281). While he had forgotten the name of the car lot, he testified that he had provided the name to counsel. (*Id.*, p. 282). Richard Strickland testified to his belief that the tail light issue was irrelevant because "lights in a vehicle can go out any time." (*Id*., p. 307). Considering this constraint on a salesperson's testimony, Strickland testified, he did not think it would be worth it to call such a witness and consequently lose his first and last closing arguments. (*Id.*, p. 308).[10] Further, he testified, whether the stop was valid had no bearing on Brown's liability for any actions after the stop because "even if it's an illegal stop it does not justify a battery on a law enforcement officer." (*Id.*). The state court denied this claim:

---

[8] *See* Dkt. 23-2, pp. 15-16.

[9] On March 14, 2005, Strickland filed a motion for continuance. He sought additional time to investigate Brown's vehicle "[i]n order to substantiate the defense theory." (Dkt. 20-1, p. 9). Strickland told the court that at that time, he had "failed to adequately pursue investigation of the Defendant's car." (*Id.*, p. 10). This characterization does not establish that Strickland performed deficiently. *Cf. Chandler v. United States*, 218 F.3d 1305, 1315 n.16 (11th Cir. 2000) (because the ineffective assistance inquiry is objective, counsel's admission of deficient performance "matters little"); *Walls v. Bowersox*, 151 F.3d 827, 836 (8th Cir. 1998) (trial counsel's concession of ineffectiveness was not decisive in an ineffective assistance claim).

[10] At the time of Brown's April 2005 trial, the defense was entitled to present first and last closing arguments if it did not call witnesses other than the defendant. *See In re Amendments to the Florida Rules of Criminal Procedure–Final Arguments*, 957 So.2d 1164 (Fla. 2007).

After reviewing the allegations, the testimony, evidence, and arguments presented at the June 12, 2012, evidentiary hearing, the court file, and the record, the Court finds Mr. Strickland's testimony to be more credible than that of Defendant. Therefore, the Court finds Mr. Strickland made a reasonable strategic decision not to investigate to discover the name of the agency that sold Defendant his vehicle. The Court finds Defendant cannot demonstrate prejudice as a result of Mr. Strickland's alleged deficient conduct when any such information would not have change[d] the outcome of the trial. Specifically, the Court finds even if the salesman could testify that the tail lights were working, Mr. Strickland would not have put the salesman on the stand at trial because he valued having first and last closing greater than having someone testify the tail lights worked when Defendant bought the car. The Court finds although the salesman's testimony would have gone to whether or not the stop was legal, it would not have justified a subsequent aggravated battery on a law enforcement officer, and therefore, not worth losing first and last closing. As such, no relief is warranted upon the allegations in claim six.

(Dkt. 23-4, pp. 200-01).

The state court made factual findings that Strickland was credible and that he made a strategic choice not to conduct further investigation. Brown has not overcome the presumption of correctness afforded to these findings by clear and convincing evidence. *See Rolling*, 438 F.3d at 1301. *See also DeBruce v. Comm'r, Ala. Dep't of Corr.*, 758 F.3d 1263, 1273 (11th Cir. 2014) (a question "regarding whether an attorney's decision is 'strategic' or 'tactical' is a question of fact.").

Review of an attorney's strategic decision focuses on whether the decision was reasonable. *See Roe v. Flores-Ortega*, 528 U.S. 470, 481 (2000) ("The relevant question is not whether counsel's choices were strategic, but whether they were reasonable."). Brown does not show that counsel's strategic decision was so unreasonable that no competent counsel would have chosen it. *See Chandler v. United States*, 218 F.3d 1305, 1314-15 (11th Cir. 2000) ("[C]ounsel cannot be adjudged incompetent for performing in a particular way in a case, as long as the approach taken might be considered sound trial strategy. . . . [B]ecause counsel's conduct is presumed reasonable, for a petitioner to show that the conduct was unreasonable, a petitioner must establish that no

competent counsel would have taken the action that his counsel did take.") (internal quotation marks and citation omitted). *See also Hittson v. GDCP Warden*, 759 F.3d 1210, 1267 (11th Cir. 2014) ("[C]ounsel need not always investigate before pursuing or not pursuing a line of defense. . . . In assessing the reasonableness of an attorney's investigation . . . a court must consider not only the quantum of evidence already known to counsel, but also whether the known evidence would lead a reasonable attorney to investigate further.") (internal quotation marks and citations omitted).

As counsel pointed out, a salesperson would have been unable to testify to the condition of the car at the time of the traffic stop. Considering this inherent limitation on a salesperson's testimony, and the fact that calling a salesperson would have cost the defense first and last closing arguments, counsel did not unreasonably decline to investigate the matter further. Additionally, Brown's claim is too speculative to establish ineffective assistance because he has not presented any evidence that he in fact bought the car the day prior to the incident or that a person with knowledge of the car's condition would have testified that the tail lights were working when Brown purchased it. *See Johnson*, 256 F.3d at 1187; *Tejada*, 941 F.2d at 1559.

Accordingly, Brown has not established that the state court's denial of his claim involved an unreasonable application of *Strickland* or was based on an unreasonable determination of the facts. He is not entitled to relief on Ground One E.

Ground One F (labeled as the second Subground One D)

Brown claims that counsel was ineffective in failing to "investigate and discover evidence that [Corporal] Rosa shot his tire out." (Dkt. 1, p. 19).[11] He claims that counsel should have checked police "ammunition logs" that would have shown Corporal Rosa fired his weapon. The

_____

[11] To the extent that Brown repeats his claims that counsel should have investigated and called the occupants of the car that Corporal Rosa had initially pulled over, his claim is denied for the reasons addressed in Ground One D.

state court conducted an evidentiary hearing on this ground, presented in claim seven of Brown's initial postconviction motion. Brown testified to his belief that the outcome of trial would have been different had counsel investigated the ammunition logs. Counsel testified that he never discussed this matter with Brown and stated that he did not "know then and [does not] know now that even such a thing exists [a]s an ammunition log for the police department. It's not something I looked into, it's not something we discussed." (Dkt. 12, Ex. 24, p. 311). The state court denied this claim:

> After reviewing the allegations, the testimony, evidence, and arguments presented at the June 12, 2012 evidentiary hearing, the court file, and the record, the Court finds Mr. Strickland's testimony to be more credible than that of Defendant. Therefore, the Court finds Mr. Strickland and Defendant never discussed ammunition logs or files. The Court also finds Defendant failed to present any ammunition logs or files to support his claim. Consequently, the Court finds Defendant cannot demonstrate any prejudice as a result of Mr. Strickland's alleged deficient conduct when Defendant could not produce any ammunition logs or files to support his claim that Officer Rosa shot out his tires on his vehicle. As such, no relief is warranted upon the allegations in claim seven.

(Dkt. 23-4, p. 202).

Brown fails to show entitlement to relief. He does not rebut, by clear and convincing evidence, the presumption of correctness afforded to the state court's factual findings that Strickland's testimony was credible and that Brown and Strickland never discussed the possibility of ammunition logs. *See Rolling*, 438 F.3d at 1301. Additionally, Brown's claim is speculative. He has not offered any evidence that an ammunition log exists or that it would show that Corporal Rosa fired his weapon at the time of the incident.[12] Brown's unsubstantiated claim cannot establish

---

[12] Brown provides a letter he sent to the Tampa Police Internal Affairs Department alleging that Coporal Rosa shot his tire, and a response that Brown's attorney should contact that Department. (Dkt. 20-1, pp. 29-31). Brown claims that counsel failed to do so. Brown did not timely present this specific allegation to the state court in his initial or amended postconviction motions. (Dkt. 12, Exs. 8, 10, 22). Accordingly, Brown has failed to exhaust this aspect of his claim, and it is now procedurally defaulted. *See Weeks v. Jones*, 26 F.3d 1030, 1044-46 (11th Cir. 1994); *Footman v. Singletary*, 978 F.2d 1207, 1211 (11th Cir. 1992). Notwithstanding the default, this allegation does not entitle Brown to relief because nothing about the letters shows that Brown and Strickland in fact discussed the possibility of ammunition logs, establishes the logs' existence, or demonstrates that such logs would have been helpful to the defense.

ineffective assistance. *See Wilson*, 962 F.2d at 998; *Tejada*, 941 F.2d at 1559. Brown does not show that the state court unreasonably applied *Strickland* or unreasonably determined the facts in denying his claim.

Within Ground One F, Brown appears to argue that counsel was ineffective in conceding his guilt by admitting that the tire blew out when Brown was driving at a high rate of speed, and that Brown crashed his car into Officer Pemberton's car. These claims are addressed in Ground One J, *infra*. Brown also argues that counsel should have looked for "radar gun evidence to establish" his speed during the chase. (Dkt. 1, p. 21). Brown did not timely present this claim to the state court. (Dkt. 12, Exs. 8, 10, 22). Because Brown cannot return to state court to file an untimely, successive postconviction motion, this claim is procedurally defaulted. *See Smith*, 256 F.3d at 1138. Brown does not argue or establish that an exception applies to excuse the default. *See id*. Alternatively, Brown's claim that "radar gun evidence" existed and was helpful to him is too vague and speculative to warrant relief because he fails to present any evidence or specific factual allegations in support of his claim. *See Wilson*, 962 F.2d at 998; *Tejada*, 941 F.2d at 1559. Accordingly, Brown is not entitled to relief on Ground One F.

Ground One G (labeled as the second Subground One E)

Brown contends that counsel was ineffective for failing to "investigate and discover evidence and witnesses." (Dkt. 1, p. 23). Brown contends that the prosecution believed that the collision with Officer Pemberton's car caused Brown to hit his head against the windshield, resulting in both his head injury and the cracks to the windshield.[13] But Brown claims that three witnesses would have

---

[13] Brown provides a Tampa Police Department offense report that states, "The injury is believed to be a result of the crash since the windshield of the suspect vehicle was shattered." (Dkt. 20-1, p. 39). This report was not introduced into evidence at trial. However, in cross-examining Brown, the State referenced the theory that Brown hit his head on the windshield during the collision with Officer Pemberton's car. (Dkt. 12, Ex. 2, p. 287). Additionally,

supported his testimony that his head was injured when the officers beat him, and that the windshield was broken when Corporal Rosa hit it with his flashlight after pulling Brown over.

First, he claims that crime scene technician Tangela Williams, who photographed the cars, would have testified that there was no blood on the inside of the windshield or car. Second, Brown claims that paramedics Jennifer Potter and Steven Fortier[14] would have testified that his head injury was caused by the altercation with the officers, not the collision. In support, he points to an EMS Report that lists the "mechanism" of the injury as "fight or brawl" and indicates that he had a laceration on the top of his head that was "apparently attained after the footchase." (Dkt. 20-1, pp. 13, 14).

Williams testified at deposition that her role in the investigation was limited to taking photographs of the scene. (Dkt. 23-2, pp. 14, 16, 21). She testified that she did not observe any blood on the windshield of Brown's car, but that she would have photographed any blood on the windshield or in the car if she had seen it. (*Id.*, pp. 21-23). The state court summarily denied Brown's claim regarding Williams:

> With respect to Ms. Williams, Defendant alleges that she was the evidence technician who collected the evidence and took pictures. He alleges she would have observed that the windshield was impacted from the outside, detected the odor of mace, and testified that no blood was found inside the vehicle or on the windshield. He alleges her testimony was critical to the nature of the destroyed tire.[15] He

---

defense counsel referenced the theory in his opening statement. (*Id.*, p. 135).

[14] The paramedics' names are spelled different ways throughout the record. The Court uses the names that appear on the EMS report. (*See* Dkt. 20-1, p. 13).

[15] Brown does not specifically argue in his federal habeas petition that counsel should have called Williams to testify about whether the windshield was impacted from the outside, whether mace was detected in the car, or what observations she made of the tire. (Dkt. 1, pp. 23-28). Even if his argument could be construed to raise these claims, he does not show that the state court's denial was unreasonable under § 2254(d). His argument is too speculative to warrant relief because he provides no evidence that Williams would have testified as he suggests. *See Johnson*, 256 F.3d at 1187. In her deposition, Williams made no mention of mace or of the car's tire, and stated that she did not recall

further alleges that each aspect of her testimony would have contradicted both Officer Rosa's and Officer Pemberton's testimony wherein they denied shooting the tire of Defendant's car, striking Defendant's windshield and hood, and using mace, and contradicted Officer Pemberton's assertion that his vehicle was not moving at impact.

In its Response, the State argues that Defendant's allegation is conclusively refuted by the record. Specifically, the State explains that Ms. Williams' deposition testimony reveals that her role in the investigation was limited to taking photographs and that her recollection of the case is limited to what was memorialized in the photographs. The Court finds the State's Response persuasive and finds that, as the record conclusively shows that Ms. Williams would not have testified as Defendant claims, he is not entitled to relief on this portion of Ground Eight.

(Dkt. 12, Ex. 13, pp. 346-47) (court's record citation omitted).

The state court conducted an evidentiary hearing on Brown's claim as to the paramedics.

Brown testified that he told counsel he wanted the paramedics deposed and called at trial. (Dkt. 12,

Ex. 14, pp. 455-59). Richard Strickland testified that he did not believe that the paramedics were

qualified to give an opinion on whether Brown's head injury resulted from a beating. (*Id*., p. 448).

He stated that any testimony to that effect would only be relevant to resisting an officer with

violence. (*Id.*, p. 446-47). But, he testified, it would be irrelevant to the most serious counts–

aggravated battery on a law enforcement officer–for which Brown faced 30-year sentences upon

conviction. (*Id*., pp. 446, 448). Accordingly, Strickland decided that the paramedics' testimony was

not of "sufficient value" to lose the "sandwich" of first and last closing arguments. (*Id.*, p. 448).

The state court denied Brown's claim:

> The Court finds counsel's testimony credible, and finds counsel's decision not to call [Potter] and [Fortier] as witnesses to be a strategic one that will not be second-guessed on collateral attack. *See Johnson v. State*, 769 So. 2d 990, 1001 (Fla. 2000). "[S]trategic decisions do not constitute ineffective assistance of counsel if alternative courses have been considered and rejected and counsel's decision was reasonable

whether the windshield was impacted from the outside. (Dkt. 23-2, pp. 9-23).

under norms of professional conduct." *Occhicone v. State*, 768 So. 2d 1037, 1048 (Fla. 2000). As such, the Court finds that Defendant is not entitled to relief on ground eight.

(Dkt. 12, Ex. 16, p. 378).

Brown does not establish that counsel performed deficiently in failing to call any of the three witnesses.[16] Brown does not demonstrate that the state court erred in its factual findings that Strickland's testimony was credible and that Strickland made a strategic decision not to call the paramedics. *See Rolling*, 438 F.3d at 1301; *DeBruce*, 758 F.3d at 1273. Nor does Brown show that counsel's strategic decision not call the paramedics was unreasonable, when, after considering the potential benefits and detriments of calling the paramedics, Strickland decided that any benefit to their potential testimony was not valuable enough to give up first and last closing arguments. *See Chandler*, 218 F.3d at 1314-15.

Further, Brown cannot demonstrate prejudice as a result of counsel's decision not to call any of the three witnesses. First, even if Williams testified that she did not see blood inside the car or on the windshield, the absence of blood is not proof that Brown did not hit his head against the windshield during the crash, or that Corporal Rosa in fact hit the windshield with his flashlight. Second, neither Williams's prospective testimony nor the paramedics' prospective testimony that they believed Brown injured his head during the struggle with police would establish that Brown did not commit the crime of resisting an officer with violence.

To establish the offense of resisting an officer with violence, the State had to prove beyond

_____

[16] Even if the state court's factual finding that Tangela Williams would not have testified as Brown proposes is an unreasonable factual finding considering Williams's deposition testimony that she did not see any blood on the windshield, Brown cannot obtain relief. A decision based on an unreasonable state court determination is subject to *de novo* review. *Daniel v. Comm'r, Ala. Dep't of Corr.*, 822 F.3d 1248, 1260 (11th Cir. 2016). The Court finds that, even reviewing *de novo* Brown's federal habeas claim concerning counsel's failure to call Williams, Brown does not establish ineffective assistance for the reasons addressed in the discussion of Ground One G.

a reasonable doubt that Brown 1) knowingly and willfully resisted, obstructed, or opposed Corporal Rosa or Officer Pemberton or Officer Baranowski or Detective O'Connor "by offering to do him violence"; 2) at the time, Corporal Rosa or Officer Pemberton or Officer Baranowski or Detective O'Connor was engaged in the lawful execution of a legal duty; and 3) at the time, Corporal Rosa or Officer Pemberton or Officer Baranowski or Detective O'Connor was an officer. (Dkt. 12, Ex. 2, p. 333).

Brown does not appear to contest that the State presented sufficient evidence to establish the second or third elements. As to the first element, the state presented evidence that it took all four of these officers to subdue Brown; that Brown thrashed his body, flailed his arms, tried to hit officers with his elbows, and attempted to kick the officers and kicked Detective O'Connor; and that Brown continued to resist after officers informed him that he was under arrest and instructed him to stop resisting. (*Id.*, pp. 148-50, 217-18, 224-226, 235, 245). Brown fails to demonstrate that this evidence was insufficient to establish the first element of resisting an officer with violence. That Brown's head may have been injured during the encounter does not change this conclusion. Accordingly, Brown does not show that the state court's decision involved an unreasonable application of *Strickland* or was based on an unreasonable determination of fact.

Finally, Brown states in his federal habeas petition that counsel did not obtain any medical records about the treatment he received for his head injury, which he believes would have "bolster[ed]" his testimony. (Dkt. 1, p. 27). To the extent this argument can be construed as a claim that counsel was ineffective in not obtaining Brown's medical records, it is unexhausted because Brown did not present this claim to the state postconviction court. (Dkt. 12, Ex. 10). As Brown cannot return to state court to present the claim in an untimely, successive postconviction motion,

it is procedurally defaulted. *See Smith*, 256 F.3d at 1138. Brown does not establish that an exception applies to overcome the default. *See id*. Alternatively, Brown's claim, unsupported by any specific facts or evidence, is too speculative to provide relief. *See Wilson*, 962 F.2d at 998; *Tejada*, 941 F.2d at 1559. In his reply, Brown appears to make the related but distinguishable claim that counsel was ineffective in not obtaining an "independent medical expert." (Dkt. 20, p. 23). Brown may not bring a new claim in his reply. *See Herring v. Sec'y, Dep't of Corr.*, 397 F.3d 1338, 1342 (11th Cir. 2005) ("[A]rguments raised for the first time in a reply brief are not properly before a reviewing court.") (citations omitted). Brown is not entitled to relief on Ground One G.

Ground One H (labeled as Subground One F)

Brown alleges that counsel was ineffective in failing to advise him that Sharona Buckalew was in Texas and therefore unavailable to testify at trial. The state court conducted an evidentiary hearing on this claim. Brown testified that Buckalew was not in Texas, and was available to testify at trial. (Dkt. 12, Ex. 24, pp. 285-86). He claimed that Buckalew would have testified to Corporal Rosa's "jealousy" and attempts to "get [Brown] out of her life." (*Id.*, p. 287). Brown testified that he never told counsel that Buckalew was in Texas at the time of trial. (*Id.*, p. 286).

Richard Strickland testified that Brown said that Buckalew resided in Texas, and that Strickland had no reason not to believe this. (*Id.*, p. 309). When asked whether he attempted to find Buckalew in Texas, Strickland answered that he did not, explaining, "I had no information to go on. I had no - - I had no city where she was, I had nothing. He said she had come here from Texas and she had gone back to Texas and that's all the information that I had." (Dkt. 23-3, p. 62). The state court denied Brown's claim:

> After reviewing the allegations, the testimony, evidence, and arguments presented at the June 12, 2012, evidentiary hearing, the court file, and the record, the Court

finds Mr. Strickland's testimony to be more credible than that of Defendant. Therefore, the Court finds Defendant told Mr. Strickland that Ms. Buckalew was in Texas. The Court further finds Ms. Buckalew did not testify at the evidentiary hearing. Consequently, the Court finds Defendant cannot demonstrate that Mr. Strickland acted deficiently when Defendant told Mr. Strickland that Ms. Buckalew was in Texas. The Court further finds Defendant cannot demonstrate any resulting prejudice when Defendant failed to present any admissible evidence at the evidentiary hearing that Ms. Buckalew would have testified as alleged. As such, no relief is warranted upon the allegations in claim nine.

(Dkt. 23-4, pp. 204-05).

Brown does not overcome, by clear and convincing evidence, the presumption of correctness attached to the state court's findings that Strickland's testimony was more credible than Brown's testimony, and that Brown told Strickland that Buckalew was in Texas.[17] *See Rolling*, 438 F.3d at 1301. Further, Strickland's testimony shows that Brown gave Strickland minimal information with which to locate Buckalew. Brown's failure to provide Strickland with more information weighs heavily in considering the reasonableness of Strickland's lack of investigation into Buckalew's location. *See Allen*, 611 F.3d at 752. Accordingly, Brown does not show that the state court unreasonably determined that Brown failed to establish deficient performance.

Further, even if counsel performed deficiently, as the state court found, Brown fails to show prejudice due to Buckalew's absence from trial. Brown did not produce any evidence establishing what testimony Buckalew would have given. *See Buckelew*, 575 F.2d at 521; *Ashimi*, 932 F.2d at 650. His speculative claim is insufficient to establish a reasonable probability that the outcome of trial would have been different if she had testified. *See Johnson*, 256 F.3d at 1187. Brown has not

---

[17] Brown repeatedly claims that Strickland knew of Buckalew's whereabouts because Brown told Strickland the name of the restaurant where Buckalew worked. Brown's allegation that he may have provided this information to Strickland at some point is not clear and convincing evidence showing that the state court erred in finding that Brown told Strickland that Buckalew was in Texas.

demonstrated that the state court unreasonably applied *Strickland* or unreasonably determined the facts in denying his claim. He is not entitled to relief on Ground One H.

Ground One I (labeled as Subground One G)

Brown argues that counsel was ineffective in failing to request a self defense jury instruction after he testified for the "sole purpose" of alleging self defense. (Dkt. 1, p. 30). The state court summarily denied this claim:

> In claim ten, Defendant alleges ineffective assistance of counsel due to Mr. Strickland's failure to request the dual jury instruction of duress and self-defense after Defendant had taken the witness stand for that sole purpose. Specifically, he alleges that the trial court records are clear the Defendant's purpose for testifying was to obtain jury instructions to support his theory of defense. He further alleges that by not instructing the jury on duress and self-defense, the jury was naturally compelled to believe that regardless of the amount of force used by the police, the Defendant had no legal right to do anything except submit to a beating.
>
> However, Defendant's claim is legally insufficient because it fails to address the prejudice prong of *Strickland*. *See Duckett*, 918 So. 2d at 235. Moreover, a review of Defendant's trial testimony reflects that any testimony which may be interpreted as presenting defenses of duress or self-defense related to Officer Rosa. The jury found Defendant not guilty of aggravated battery on Officer Rosa. Therefore, Defendant has failed to prove how counsel's alleged failure to request the alleged jury instruction resulted in prejudice when the jury found Defendant not guilty of aggravated battery on Officer Rosa. Accordingly, this claim is denied.

(Dkt. 12, Ex. 9, pp. 86-87) (court's record citations omitted).

Brown failed to allege facts in his postconviction motion that he was prejudiced as a result of counsel's failure to request a self-defense jury instruction. (Dkt. 12, Ex. 8, pp. 40-42). The state court's denial of his claim for failing to address prejudice was a ruling on the merits. *See Borden v. Allen*, 646 F.3d 785, 807-16 (11th Cir. 2011) (state court's ruling that a petitioner's vague, unsupported arguments were insufficient to withstand summary dismissal was an adjudication on the merits); *Gaedtke v. Sec'y, Dep't of Corr.*, 369 Fed. App'x 12, 16 n.2 (11th Cir. 2010) (state

court's rejection of an ineffective assistance claim as facially insufficient when petitioner did not allege he was prejudiced and therefore "failed the prejudice prong of *Strickland*" constituted a decision on the merits).  Here, Brown's failure to plead facts sufficient to support a finding of prejudice results in a failure to demonstrate that he was prejudiced by counsel's performance.

Further, it is not apparent that Brown was entitled to a self-defense instruction because this instruction would have been inconsistent with Brown's defense.  With the exception of the charge of driving without a valid license, which he conceded,[18] Brown denied committing the offenses.  *See Smith v. State*, 698 So.2d 632, 633 (Fla. 2d DCA 1997)  ("A defendant is not entitled to an instruction on self-defense unless there is evidence to support the instruction. . . . [A self-defense] instruction[] presume[s] that the charged defendant is the person who committed the crime, and suggest[s] to the jury there exists a legal excuse for the defendant's criminal conduct.  Self-defense . . . results in a tacit admission that the defendant committed the crime at issue.").  Moreover, as the state court noted, the record demonstrates that Brown was not prejudiced by counsel's failure to request a self defense instruction.  He was acquitted of count one, and he does not show a reasonable probability of a different outcome as to the other counts, which were supported by the testimonial evidence of the State's five witnesses.  The state court did not unreasonably apply *Strickland* or unreasonably determine the facts in denying Brown's claim.[19]  Brown is not entitled to relief on Ground One I.

Ground One J (labeled as Subground One H)

---

[18] *See* Dkt. 12, Ex. 2, p. 150.

[19] Brown claims that the state postconviction court erred in not allowing him an opportunity to amend his claim pursuant to *Spera v. State*, 971 So.2d 754 (Fla. 2007).  This claim is not cognizable because it challenges the postconviction proceedings, not the validity of Brown's judgment.  *See Carroll*, 574 F.3d at 1365.

Brown argues that counsel was ineffective in conceding Brown's guilt without his consent. Specifically, he claims that counsel admitted that he hit Officer Pemberton's car, that he was going 60 miles per hour during the chase, and that his tire blew out, contrary to Brown's testimony that Officer Pemberton hit him and that he traveled at slow speeds after Corporal Rosa shot his tire out.

Brown alleged in his second amended postconviction motion, within ground two, that counsel was ineffective in conceding his guilt by admitting that he swerved into Officer Pemberton's car. (Dkt. 12, Ex. 22, p. 83). The state court denied claim two, finding that Brown did not establish either deficient performance or prejudice. (Dkt. 12, Ex. 25, pp. 194-95). Brown fails to establish that the state court unreasonably denied his claim. The state court accepted counsel's evidentiary hearing testimony that photographic evidence showed that the collision occurred in Officer Pemberton's lane of travel. (Dkt. 12, Ex. 24, pp. 305-06). Faced with evidence showing that Brown had traveled into Officer Pemberton's lane, counsel argued to the jury that Brown did not intentionally do so, but rather that Brown had no control of his own vehicle as he approached Officer Pemberton's car. (Dkt. 12, Ex. 2, pp. 134, 319). Accordingly, he argued that Brown could not have formed the requisite intent to touch or strike Officer Pemberton necessary to prove aggravated battery of Officer Pemberton. (*Id.*, p. 319). Given the evidence demonstrating that the collision occurred in Officer Pemberton's lane, Brown fails to show that counsel was ineffective in taking this approach. Nor does he show a reasonable probability that the outcome of trial would have been different had counsel not made this argument. Thus, Brown fails to show that the state court's denial

of his claim involved an unreasonable application of *Strickland* or was based on an unreasonable factual determination.[20]

When Brown argued in a subsequent postconviction motion that counsel was ineffective in conceding that he was speeding during the chase and that his tire was shot out, the state court denied his claim as successive and untimely. The court determined that the motion was an impermissible successive motion under Rule 3.850(h), finding, "there is no good cause for Defendant's failure to assert his allegation of ineffective assistance of counsel in his previous postconviction motion as his allegation is based on events that occurred at or before his trial." (Dkt. 12, Ex. 32, p. 4). The court also found that the motion was untimely because it was filed "approximately eight years after [Brown's] judgment and sentence became final," contrary to Rule 3.850(b)'s requirement that a movant raise his postconviction claims within two years of the date the judgment and sentence become final. (*Id.*, p. 5). The court also found that no exceptions to the two-year rule applied. (*Id.*, pp. 5-6). Accordingly, the court concluded that the motion was "procedurally barred." (*Id.*, p. 6). The state appellate court affirmed this ruling. (Dkt. 12, Ex. 33).

If a state court's rejection of a federal constitutional claim is based on an "independent and adequate" state procedural ground, federal review of the claim is barred. *Judd v. Haley*, 250 F.3d 1308, 1313 (11th Cir. 2001). *See also Caniff v. Moore*, 269 F.3d 1245, 1247 (11th Cir.2001) ("[C]laims that have been held to be procedurally defaulted under state law cannot be addressed by federal courts."). A state court's procedural ruling constitutes an independent and adequate state rule of decision if (1) the last state court rendering a judgment in the case clearly and expressly states

---

[20] Even assuming that the state court did not specifically address Brown's claim that counsel was ineffective in conceding his guilt by stating that he drove into Officer Pemberton's car and that *de novo* review is therefore appropriate, *see Davis v. Sec'y, Dep't of Corr.*, 341 F.3d 1310, 1313 (11th Cir. 2003), the claim fails for the same reasons addressed in the body of this Order.

that it is relying on a state procedural rule to resolve the federal claim without reaching the merits of the claim, (2) the state court's decision rests solidly on state law grounds and is not intertwined with an interpretation of federal law, and (3) the state procedural rule is not applied in an "arbitrary or unprecedented fashion" or in a "manifestly unfair manner." *Judd*, 250 F.3d at 1313 (citing *Card v. Dugger*, 911 F.2d 1494 (11th Cir. 1990)).

To be considered adequate, a rule must be firmly established and regularly followed. *Lee v. Kemna*, 534 U.S. 362, 376 (2002). In Florida, a second or successive postconviction motion is an "extraordinary pleading." Fla. R. Crim. P. 3.850(h)(2). As the state court noted, under this rule, a court may dismiss a second or successive motion if the court "finds that the failure of the defendant or the attorney to assert [new and different] grounds in a prior motion constituted an abuse of the procedure or there was no good cause for the failure of the defendant or defendant's counsel to have asserted those grounds in a prior motion." *Id.* Florida decisions also address the dismissal of successive postconviction motions. *See Owen v. Crosby*, 854 So.2d 182, 187 (Fla. 2003) ("A second or successive motion for postconviction relief can be denied on the ground that it is an abuse of process if there is no reason for failing to raise the issues in the previous motion. . . . [C]laims that could have been raised in a prior postconviction motion are procedurally barred."); *Christopher v. State*, 489 So.2d 22, 24 (Fla. 1986) (recognizing that Rule 3.850 allows a court to summarily dismiss a successive postconviction relief that raises new grounds).

The state court's resolution of Brown's claim on an independent and adequate state bar results in a procedural default. Therefore, the claim can only be considered if Brown establishes that either the cause and prejudice or fundamental miscarriage of justice exception applies to overcome the default. *See Harris v. Reed*, 489 U.S. 255, 262 (1989) ("[A]n adequate and independent finding

of procedural default will bar federal habeas review of the federal claim, unless the habeas petitioner can show" one of these exceptions).

Brown claims that the fundamental miscarriage of justice exception applies. A fundamental miscarriage of justice occurs in an extraordinary case where a constitutional violation has probably resulted in the conviction of someone who is actually innocent. *Schlup v. Delo*, 513 U.S. 298, 327 (1995); *Henderson v. Campbell*, 353 F.3d 880, 892 (11th Cir. 2003). Brown's "claim of innocence is . . . 'not itself a constitutional claim, but instead a gateway through which [he] must pass to have his otherwise barred constitutional claim considered on the merits.'" *Schlup*, 513 U.S. at 315 (quoting *Herrera v. Collins*, 506 U.S. 390, 404 (1993)).

This exception requires a petitioner's "actual" innocence. *Johnson*, 256 F.3d at 1171. "To be credible, . . . a claim [of actual innocence] requires petitioner to support his allegations of constitutional error with new reliable evidence–whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence–that was not presented at trial." *Schlup*, 513 U.S. at 325. Brown presents a generalized, vague claim without offering any new, reliable evidence of his actual innocence. Accordingly, he fails to establish that the fundamental miscarriage of justice exception applies to excuse the default of his ineffective assistance claim. Ground One J does not warrant relief.

Ground One K (labeled as Subground One I)

Brown claims that he is entitled to relief based on the cumulative effect of counsel's alleged errors. This claim is unexhausted because Brown did not timely raise it in state court. (Dkt. 12, Exs. 8, 10, 22). Notwithstanding the lack of exhaustion and resulting procedural default, Brown is not entitled to relief because he has not established any instances of ineffective assistance of counsel.

*See United States v. Barshov*, 733 F.2d 842, 852 (11th Cir. 1984) ("Without harmful errors, there can be no cumulative effect compelling reversal."). Accordingly, Brown is not entitled to relief on Ground One K.

Ground Two

Brown claims that the State violated *Brady*, resulting in a federal due process violation, by disposing of his car and Officer Pemberton's car. Brown concedes that this claim is unexhausted because he failed to raise it in state court and is now procedurally defaulted. But he alleges that the default should be excused through the fundamental miscarriage of justice exception. For the same reasons discussed in Ground One J, *supra*, Brown fails to show that the fundamental miscarriage of justice exception applies to excuse the procedural default. Accordingly, Ground Two is procedurally defaulted and barred from review.

Any of Brown's claims not specifically addressed herein have been determined to be without merit.

Accordingly, it is **ORDERED** that:

1. Brown's petition (Dkt. 1) is DENIED.

2. The Clerk is directed to enter judgment against Brown and close this case.

3. Brown is not entitled to a certificate of appealability ("COA"). A petitioner does not have absolute entitlement to appeal a district court's denial of his habeas petition. 28 U.S.C. § 2253(c)(1). A COA must first issue. *Id*. "A [COA] may issue ... only if the applicant has made a substantial showing of the denial of a constitutional right." *Id*. at § 2253(c)(2). To make such a showing, Brown "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," *Tennard v. Dretke*, 542 U.S. 274, 282 (2004) (quoting

*Slack v. McDaniel*, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further.'" *Miller-El v. Cockrell*, 537 U.S. 322, 335-36 (2003) (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893 n.4 (1983)).  Brown has not made this showing. Because Brown is not entitled to a COA, he is not entitled to appeal *in forma pauperis*.

    **ORDERED** in Tampa, Florida, on March 27, 2019.

*Charlene Edwards Honeywell*
Charlene Edwards Honeywell
United States District Judge

<u>Copies to</u>:
Christopher Brown
Counsel of Record